# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1129 |

| | |
|---|---|
| COMPLETE TITLE: | City of Cedarburg,<br>　　　　Plaintiff-Appellant,<br>　　v.<br>Ries B. Hansen,<br>　　　　Defendant-Respondent. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | February 11, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 9, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Ozaukee |
| JUDGE: | Paul V. Malloy |

JUSTICES:

ROGGENSACK, C.J., delivered the majority opinion of the Court, in which ZIEGLER, REBECCA GRASSL BRADLEY and KELLY, JJ., joined. KELLY, J., filed a concurring opinion, in which REBECCA GRASSL BRADLEY, J., joined. HAGEDORN, J., filed a dissenting opinion, in which ANN WALSH BRADLEY and DALLET, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellants, there were briefs (in the court of appeal) filed by *Jonathan G. Woodward* and *Houseman & Feind, LLP,* Grafton. There was an oral argument by *Jonathan G. Woodward*.

For the defendant-respondent, there was a brief (in the court of appeals) filed by *Andrew Mishlove* and *Mishlove & Stuckert, LLC*, Glendale. There was an oral argument by *Andrew Mishlove*.

2020 WI 11

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2018AP1129
 (L.C. No.  2017CV411)

STATE OF WISCONSIN            :         IN SUPREME COURT

**City of Cedarburg,**

      **Plaintiff-Appellant,**

    **v.**

**Ries B. Hansen,**

      **Defendant-Respondent.**

**FILED**

**FEB 11, 2020**

Sheila T. Reiff
Clerk of Supreme Court

---

ROGGENSACK, C.J., delivered the majority opinion of the Court, in which ZIEGLER, REBECCA GRASSL BRADLEY and KELLY, JJ., joined. KELLY, J., filed a concurring opinion, in which REBECCA GRASSL BRADLEY, J., joined. HAGEDORN, J., filed a dissenting opinion, in which ANN WALSH BRADLEY and DALLET, JJ., joined.

---

APPEAL from an order of the Circuit Court of Ozaukee County. *Reversed.*

¶1   PATIENCE DRAKE ROGGENSACK, C.J.   This case comes before us on bypass, pursuant to Wis. Stat. § 809.60 (2017–18),[1] from the circuit court for Ozaukee County.[2]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[2] The Honorable Paul V. Malloy of Ozaukee County presided.

¶2 In 2005, Ries B. Hansen was convicted by the Mid-Moraine Municipal Court of Operating While Intoxicated (OWI) in violation of a City of Cedarburg ordinance, based upon Hansen's guilty plea to the alleged violation.[3] In 2016, when he was again charged with OWI, Hansen collaterally attacked his 2005 conviction by proving that he had a 2003 OWI conviction in Florida. He contended that his 2005 OWI was factually a second offense and therefore, outside of the municipal court's limited subject matter jurisdiction. The circuit court agreed and vacated Hansen's 2005 conviction.

¶3 We conclude that the 2005 municipal citations invoked the municipal court's subject matter jurisdiction, which was granted by Article VII, Section 14 of the Wisconsin Constitution. Therefore, the municipal court had power to adjudicate the allegation that Hansen operated a motor vehicle while intoxicated in violation of a municipal ordinance. And further, even if we were to agree with Hansen that Wisconsin's statutory progressive OWI penalties were not followed in 2005, the municipal court would have lacked competence not subject matter jurisdiction. City of Eau Claire v. Booth, 2016 WI 65, ¶14, 370 Wis. 2d 595, 882 N.W.2d 738.

¶4 And finally, an objection to a court's competence may be forfeited if it is not raised in a timely manner. Id., ¶1. Hansen was silent about his 2003 Florida OWI conviction until he was again arrested for OWI in 2016. We conclude that, by his 11 years of

---

[3] The Mid-Moraine Municipal Court serves multiple municipalities in Washington County and Ozaukee County.

2

silence, Hansen has forfeited any competence objection that could exist. Accordingly, his 2005 and 2003 convictions were countable offenses in 2016 for purposes of Wisconsin's statutory progressive penalty requirements, and we reverse the order of the circuit court.

## I. BACKGROUND

¶5 This case is grounded in three OWI convictions and their effects on each other due to Wisconsin's statutory progressive penalty requirements for OWI-related events. In 2005, Hansen was arrested in Wisconsin for OWI.[4] The arresting officer who issued the civil citations, the municipal court, and the municipal attorney who prosecuted the 2005 offense did not know that Hansen had a 2003 OWI conviction in Florida.

¶6 Therefore, Hansen was charged with violating a Cedarburg ordinance, and he was prosecuted as an OWI first-offender. Hansen alleges, in a footnote in his brief, that the Ozaukee County District Attorney knew of the Florida OWI and "declined to prosecute that matter as a criminal offense due to a lack of clarity in the records."[5] However, he admits he is "unable to confirm whether that occurred."[6] Cedarburg asserts that the Florida OWI was unknown. It points to Hansen's Wisconsin driving

---

[4] He was arrested for operating a vehicle with both a prohibited alcohol concentration (PAC) and while intoxicated. Based on his plea, the municipal court convicted him of OWI and the PAC charge was dismissed.

[5] Resp't br. at 1 n.2.

[6] Id.

3

record dated May 22, 2005 that was submitted by affidavit and does not show a prior OWI offense.[7]

¶7 However, as Hansen's 2016 collateral attack shows, he knew of his Florida OWI conviction, but he did not disclose it in 2005. Instead, by written stipulation signed by his attorney, he pled guilty to a municipal OWI citation and the PAC citation was dismissed.

¶8 In 2016, when Hansen again was arrested for OWI, he was charged under state statute as OWI-third because the arresting officer had knowledge of the 2005 OWI conviction, as well as the Florida conviction. Hansen collaterally attacked the validity of the 2005 municipal court conviction. He asserted that the municipal court did not have jurisdiction to prosecute him in 2005 because that OWI was factually a second offense, which is a criminal offense, for which municipal courts have no jurisdiction. He contended that his 2016 OWI violation could be counted only as a first-offense OWI because the 2005 conviction was void due to lack of municipal court jurisdiction and his 2003 Florida OWI occurred more than 10 years before his 2016 Wisconsin OWI.

¶9 In his collateral attack, Hansen moved the circuit court to vacate his 2005 conviction. The circuit court granted the motion. The court concluded that the municipal court did not have subject matter jurisdiction to adjudicate the 2005 OWI offense because factually it was a second offense, and therefore, a criminal offense outside of the municipal court's jurisdiction.

---

[7] Exhibit E, R: 9-7.

¶10 Hansen also moved the municipal court to vacate its judgment of conviction for the 2005 OWI.[8] The municipal court denied Hansen's motion. It reasoned that an error in charging affected the municipal court's competence but not its jurisdiction. Hansen sought review of the municipal court's decision in the Ozaukee County Circuit Court. The circuit court reversed the municipal court, for a second time concluding that the 2005 judgment was void for lack of municipal court subject matter jurisdiction.

¶11 We granted bypass to determine whether Hansen's undisclosed 2003 Florida OWI conviction negated the municipal court's jurisdiction or impacted only its competence in 2005. We conclude that any error that occurred affected only the municipal court's competence. Accordingly, we reverse the circuit court.

## II. DISCUSSION

### A. Standard of Review

¶12 We independently interpret and apply Wisconsin statutes under known facts as questions of law. Daniel v. Armslist, LLC, 2019 WI 47, ¶13, 386 Wis. 2d 449, 926 N.W.2d 710.

¶13 Similarly, "We independently review questions of subject matter jurisdiction and competenc[e]." Booth, 370 Wis. 2d 595, ¶6 (citing Vill. of Trempealeau v. Mikrut, 2004 WI 79, ¶7, 273 Wis. 2d 76, 681 N.W.2d 190). Lastly, we independently review whether a party has forfeited his or her right to challenge a

---

[8] The Honorable Steven M. Cain of Ozaukee County presided.

court's competence.  See Booth, 370 Wis. 2d 595, ¶6 (citing Mikrut, 273 Wis. 2d 76, ¶7).

### B.  Statutory Progressive Penalties

#### 1.  Overview

¶14  This case involves the legal issue of whether the municipal court's lack of knowledge of Hansen's 2003 Florida conviction affected its subject matter jurisdiction or only its competence in 2005.  Wisconsin's OWI penalties escalate with each countable offense both in regard to the nature of the conviction and in regard to the monetary and confinement consequences.  As a beginning, a first offense is a civil forfeiture.[9]  Wis. Stat. § 346.65(2)(am).   Second and third offenses are misdemeanors. § 346.65(2)(am)2. & 3.   A fourth offense is a Class H Felony. § 346.65(2)(am)4.  The penalty continues to escalate until a tenth offense, which is a Class E Felony.  § 346.65(2)(am)7.

¶15  Under Wisconsin's progressive penalties for OWI-related offenses, a countable offense does not have to be an OWI conviction.  Wisconsin Stat. § 343.307(1) lists a variety of offenses, some of which do not arise from OWI convictions.  For example, revocation for improper refusal to take a chemical test that law enforcement has requested counts the same as an OWI

---

[9] Wisconsin is the only state where the penalty for a first-offense OWI is a civil forfeiture.  Todd Richmond, Criminalizing 1st-time DUIs Is a Tough Sell in Wisconsin, Chi. Tribune (Jan. 13, 2019), https://www.chicagotribune.com/nation-world/ct-wisconsin-criminal-dui-20190113-story.html; Andrew Mishlove & Lauren Stuckert, Wisconsin's New OWI Law, Wis. Lawyer, June 2010, https://www.wisbar.org/NewsPublications/WisconsinLawyer/Pages/Article.aspx?Volume=83&Issue=6&ArticleID=2045.

conviction for purposes of increasing statutory penalties. Wis. Stat. § 343.307(1)(f); Wis. Stat. § 343.305(10).

¶16 Furthermore, the prohibited conduct need not occur in Wisconsin. Out-of-state OWI-related events count as "[c]onvictions under the law of another jurisdiction that prohibits a person from refusing chemical testing." Wis. Stat. § 343.307(1)(d). A court also counts administrative "[o]perating privilege suspensions or revocations under the law of another jurisdiction arising out of a refusal to submit to chemical testing." § 343.307(1)(e).

¶17 Prosecutors and courts cannot knowingly disregard countable offenses. County of Walworth v. Rohner, 108 Wis. 2d 713, 721, 324 N.W.2d 682 (1982). For example, a prosecutor has no discretion to prosecute a second-offense OWI, which he knows is a second offense, as a first offense. Id. at 718. Wisconsin's progressive OWI penalties are mandatory directives from the legislature "to encourage the vigorous prosecution of offenses concerning the operation of motor vehicles by persons under the influence . . . ." Wis. Stat. § 967.055(1)(a).

¶18 Initially, municipal courts were not involved in prosecuting OWI-related events. However, in 1957, the Wisconsin legislature authorized municipalities to adopt such traffic regulations, as long as the regulations were in "strict conformity with the state statute." Id. at 719. The legislation required that the municipality's penalty was a civil forfeiture. Id. Problematically, at the time, violation of a state OWI traffic regulation was a crime. Id. Giving local governments the power

7

to enact non-criminal versions of state traffic regulations led to inequality. Id. That is, under those provisions, a person whose OWI violation was adjudicated by a municipal court would face a civil penalty, whereas another person who engaged in the same conduct would face a criminal penalty in circuit court. Id.

¶19 In 1971, the legislature tried to remedy that inequality. Id. (citing § 66, ch. 278, Laws of 1971). First, it decriminalized violations of several state traffic regulations, including first-offense OWI. Id. at 720. Second, the law "provided a uniform statewide procedure governing prosecutions under both state statutes and conforming local regulations." Id.

2. Wisconsin Stat. § 343.307

¶20 Progressive penalties for OWI violations are set out in Wis. Stat. § 346.65[10] based on the application of Wis. Stat. § 343.307 to OWI-related events. Interpretation of § 343.307 underlies the specific competence question presented in this case, but neither party directly engages in statutory interpretation because each simply assumes a somewhat different interpretation and then argues from that interpretation.

¶21 Wisconsin Stat. § 343.307 provides in relevant part:

---

[10] Relevant to our discussion here, the minimum punishment for a first offense OWI is a $150 forfeiture, Wis. Stat. § 346.65(2)(am)1., while the minimum punishment for a third offense OWI is a $600 fine and 45 days in county jail. § 346.65(2)(am)3. The maximum punishment for a first offense OWI is a $300 forfeiture, while the maximum punishment for a third offense is a $2,000 fine and one year in county jail. § 346.65(2)(am)1. & 3.

(1) The court shall count the following to determine the length of a revocation under s. 343.30(1q)(b) and to determine the penalty under ss. 114.09(2) and 346.65(2):

(a) Convictions for violations under s. 346.63(1), or a local ordinance in conformity with that section.

. . . .

(d) Convictions under the law of another jurisdiction that prohibits . . . using a motor vehicle while intoxicated . . . .

¶22  Statutory interpretation begins with the language chosen by the legislature.  If the meaning is plain, we ordinarily stop the inquiry.  Sorenson v. Batchelder, 2016 WI 34, ¶11, 368 Wis. 2d 140, 885 N.W.2d 362 (citing Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 119).  Plain meaning is assisted by the context in which the words are used.  Batchelder, 368 Wis. 2d 140, ¶11.  We also interpret the statutory language reasonably "to avoid absurd or unreasonable results."  Id.

¶23  Wisconsin Stat. § 343.307 plainly requires a court to "count" prior convictions.  The statute employs mandatory terms, "shall count."  The court is to do so in order "to determine" the length of revocation and other penalties that arise from OWI convictions.  There is nothing in the plain wording of § 343.307 that even implies that a court is precluded from counting an OWI conviction to determine the length of revocation or other penalty.

¶24  However, Hansen contends that he has no OWI convictions that can be counted when his 2016 OWI violation is adjudicated. He argues that because the municipal court did not count his 2003 Florida conviction in 2005, the court adjudicated a matter for

9

which it had no subject matter jurisdiction. This lack of jurisdiction, he argues, voids his 2005 conviction and causes his 2003 Florida conviction to occur more than 10 years before his 2016 violation, thereby preventing his 2003 Florida conviction from having an effect on the penalty for his 2016 violation.

¶25 Hansen's argument fails because the municipal court had subject matter jurisdiction in 2005, as we explain directly below. Therefore, his 2005 conviction stands and it, together with his 2003 Florida conviction, must be counted in 2016 under the plain terms of Wis. Stat. § 343.307. Furthermore, although Hansen's silence gave him a lesser penalty in 2005, the progressive penalties set out in Wis. Stat. § 346.65 were honored when Hansen was charged in 2016 with OWI-third pursuant to § 343.307. Hansen's silence in 2005 had an effect only on the municipal court's competence in 2005. As we said in Mikrut, and explain more fully below, a loss of competence "can be triggered by a variety of defects in statutory procedure." Mikrut, 273 Wis. 2d 76, ¶12.

C. Invoking Municipal Court Jurisdiction

¶26 Article VII, Section 14 of the Wisconsin Constitution provides, "All municipal courts shall have uniform jurisdiction limited to actions and proceedings arising under ordinances of the municipality." Wis. Const. art. VII, § 14. Accordingly, the constitution confers jurisdiction on municipal courts to adjudicate alleged ordinance violations. Wisconsin Stat. § 755.045(1) further provides that municipal courts have "exclusive jurisdiction" to enforce their ordinances. Because it is foundational to jurisdiction of municipal courts, we interpret

10

the phrase "actions and proceedings arising under ordinances of the municipality" in Article VII, Section 14.

¶27 It is undisputed that at the time the proceeding in municipal court commenced, it was based on an alleged ordinance violation. Stated otherwise, in 2005, the proceeding was commenced by Hansen's civil traffic citations, which are the pleadings that alleged that the OWI and PAC violations arose under an ordinance.

¶28 The means by which an action or proceeding arises is central to our discussion. In another context, we have described the phrase, "arising under," as conferring jurisdiction at the time that "the plaintiff is able, from the nature of his case, to set up in his declaration or complaint, some right or equity against the defendant, arising under the constitution, laws or treaties of the United States." Ableman v. Booth, 11 Wis. 517 (*498), 531-32 (*512) (1859). We further explained, "the facts conferring jurisdiction, would, by the plaintiff's showing, appear affirmatively upon the record, and the court might entertain the case." Id. at 532. As Ableman shows, we concluded that "arising under" was tied to the facts that the pleading alleged.[11]

¶29 Confining ourselves to the four corners of the municipal citations that commenced the municipal court proceeding, Hansen was charged with two violations of a municipal ordinance that was

---

[11] Ableman was a one justice opinion. In 1859, the Wisconsin Supreme Court had only three justices. One justice recused and another dissented without filing an opinion. We note that the disagreement between the two justices was not with the portion of Ableman on which we rely.

in conformity with statutory provisions.[12] Hansen contends that subject matter jurisdiction in municipal court is defeated by his 2003 Florida conviction. Whether the alleged OWI violation was, or was not, preceded by a prior offense is not an element of an OWI ordinance violation, nor is it an element of an OWI criminal violation. State v. McAllister, 107 Wis. 2d 532, 538, 319 N.W.2d 865 (1982) ("[W]e hold that the fact of a prior violation, civil or criminal, is not an element of the crime of [OWI] either in the ordinary sense of the meaning of the word element, i.e., the incidents of conduct giving rise to the prosecution, or in the constitutional sense.").

¶30 A defendant's prior convictions determine his status as a repeat offender, not his guilt. State v. Saunders, 2002 WI 107, ¶3, 255 Wis. 2d 589, 649 N.W.2d 263. However, the State must prove a defendant's status as a prior offender at sentencing, where prior convictions must be established beyond a reasonable doubt.[13] Id.

---

[12] Wisconsin Stat. § 349.06(1)(a) states, in relevant part, that "any local authority may enact and enforce any traffic regulation which is in strict conformity with one or more provisions of chs. 341 to 348 and 350 for which the penalty for violation thereof is a forfeiture." Citations E626967-4 and -5 allege that Hansen twice violated Cedarburg ordinance 10-1-1a (in strict conformity with Wis. Stat. § 346.63(1)(a)) for operating while intoxicated and (in strict conformity with § 346.63(1)(b)) because of a "prohibited B.A.C. (breath)."

[13] In a criminal OWI prosecution, the jury never hears about the number of prior offenses. Wis. JI—Criminal 2663 (2006). This does not pose constitutional problems because prior convictions are not facts that must be submitted to the jury. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Indeed, in practice,

12

Importantly, the city attorney is not required to allege or prove that the defendant had no prior offenses.

¶31 We also have said that "arising under" jurisdiction is incredibly broad. Beck v. State, 196 Wis. 242, 244, 219 N.W. 197, 199 (1928) (explaining that a court has "jurisdiction to hear and determine all questions arising under the provisions of the inheritance tax laws"). We said, "[i]t is difficult to see how a broader jurisdiction could be conferred upon any court upon a given subject." Id. at 247. We then quoted the United States Supreme Court describing jurisdiction as the "power to entertain the suit, consider the merits and render a binding decision thereon; and by merits we mean the various elements which enter into or qualify the plaintiff's right to the relief sought." Id. (quoting General Inv. Co. v. N.Y. Cent. R.R. Co., 271 U.S. 228 (1926)).

¶32 We conclude that the municipal court did not entertain a suit for a second-offense OWI because there was no allegation of a prior offense in the charging documents.[14] Therefore, he was

---

defendants are often the ones asking that prior convictions not be introduced into evidence. The fear is that the jury will treat the prior convictions as establishing a propensity for the conduct in question. "The policy of the law recognizes the difficulty of containing the effects of such information which, once dropped like poison in the juror's ear, 'swift as quicksilver it courses through the natural gates and alleys of the body.'" R. v. Handy, [2002] 2 S.C.R. 908, ¶40 (Can.) (quoting Hamlet, Act I, Scene v, 11).

[14] We also note that according to Hansen's argument, neither a defendant nor defense counsel has any requirement to inform a court about prior offenses. Indeed, a defense attorney may have an ethical obligation to safeguard information about prior convictions. Revised Wis. Ethics Op. E-86-06 (Dec. 29, 2018) at 4 n.9 ("Counsel's knowledge of the client's prior conviction is

prosecuted for ordinance violations shown on the civil citations he was issued.

¶33  The history of the 1977 constitutional amendment that created Article VII, Section 14 of the Wisconsin Constitution is instructive.  The amendment process started with the passage of 1975 Joint Resolution 13.  A summary and analysis of the resolution explained:

> The proposed amendment would limit the jurisdiction of municipal courts to actions and proceedings arising under the ordinances of the municipality in which established.  Presently, municipal courts could constitutionally be given jurisdiction equal to that of circuit courts, although municipal courts are statutorily restricted to hearing cases involving ordinance violations.

Jim Fullin, Summary and Analysis of 1975 Enrolled Joint Resolution 13 Relating to the State Court System 4 (1976) (on file at the David T. Prosser, Jr. Wisconsin State Law Library).  The reference to "hearing cases involving ordinance violations" is telling.  A municipal court is hearing such a case when that is what has been alleged in a charging document, such as a civil citation for OWI.

---

information that relates to the representation and is protected by SCR 20:1.6(a).").  The Ethics Opinion does, however, explain that a defense lawyer "has a duty not to provide false information to the court" and discusses counsel's obligations under SCR 20:3.3(a)(1) when the "court directly asks counsel or the defendant about the prior record."  In those situations, "counsel may not knowingly report an incorrect number of prior OWI convictions."  Invoking subject matter jurisdiction should not depend on facts that no party has an obligation to bring to the court's attention.

¶34 In 1973, a similar attempt had been made at reforming municipal courts. The proposal was summarized by a Report from the Wisconsin Legislative Council:

> In present section 2, the Legislature is authorized to create municipal courts with trial powers in their municipalities equal to that of the circuit courts. Assembly Joint Resolution 5 provides that the Legislature may provide for municipal courts, but under amended section 14, the trial jurisdiction of these courts as provided by law may not be greater than the trial of ordinance violations, state traffic offenses and forfeiture actions.

Wis. Legislative Council, Report to the 1973 Legislature on Court Reorganization 10-11 (Mar. 1973) (on file at the David T. Prosser, Jr. Wisconsin State Law Library).

¶35 Of particular importance is the report's reference to "trial of ordinance violations." A trial, by definition, is a fact-finding mission to determine the truth of allegations in a pleading. Trial, Black's Law Dictionary (11th ed. 2019) (defining a trial as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding"). It should go without saying that a municipal court trial can occur only after jurisdiction arises under Article VII, Section 14.

¶36 Federal case law has persuasive value in defining "arising under" because both the United States Constitution and federal statutes use the phrase, "arising under."[15] At oral

_____

[15] U.S. Const. art. III, § 2 ("The judicial power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ."); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

15

argument, Hansen argued by analogizing to federal case law on jurisdictional facts. Specifically, Hansen referred us to the United States Supreme Court's decision in Arbaugh v. Y&H Corp., 546 U.S. 500 (2006), which we conclude supports our conclusion that municipal court subject matter jurisdiction is invoked by the pleadings.

¶37 Arbaugh concluded that "[a] plaintiff properly invokes § 1331 [federal question] jurisdiction . . . when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." Id. at 513 (citing Bell v. Hood, 327 U.S. 678, 681–85 (1946)). Arbaugh explained that there is a difference between invoking and establishing jurisdiction: the United States Constitution establishes jurisdiction when a plaintiff's case arises under a federal law and the plaintiff invokes that jurisdiction. Arbaugh, 546 U.S. at 513. Congress can make certain facts a prerequisite to a claim arising under federal law, e.g., the amount-in-controversy threshold in diversity actions.[16]   Id. at 515–16 (citing 28 U.S.C. § 1332). These facts are distinguished from facts going to the merits of the case. Id. at 513–14.

United States.").

[16] The United States Supreme Court concluded that Congress must use clear language to create a prerequisite fact necessary to jurisdiction. Arbaugh v. Y&H Corp., 546 U.S. 500, 515 (2006) (internal citations removed) (modifications in the original) ("Given the 'unfair[ness]' and 'waste of judicial resources' entailed in tying the employee-numerosity requirement to subject-matter jurisdiction, we think it the sounder course to refrain from constricting [U.S.C.] § 1331 or Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3), and to leave the ball in Congress' court.").

16

¶38 However, even when Congress creates a prerequisite jurisdictional fact, it does not necessarily follow that the fact's non-existence when the merits of the action are tried negates subject matter jurisdiction that has been invoked by the allegations in the pleadings.  Diversity jurisdiction is an example.  Currently, the amount-in-controversy must be greater than $75,000.  28 U.S.C. § 1332(a).  If a plaintiff invokes diversity jurisdiction, the defendant can contest the amount-in-controversy with the possibility of proving subject matter jurisdiction is not established.  However:

> [I]f the defendant does not lodge a challenge, the plaintiff's good-faith allegation controls, even if the amount in controversy does not, in fact, exceed the jurisdictional threshold.  The parties' pleading choices can thus establish jurisdiction even when the amount in controversy is, in fact, below the threshold.

Scott Dodson, Jurisdiction and Its Effects, 105 Geo. L.J. 619, 631 (2017).  It is not as if, should the jury return a verdict for less than $75,000, the lack of finding for the jurisdictional amount negates the federal court's jurisdiction.  Federal court jurisdiction does not turn on facts unknown at the start of the proceeding, but rather, jurisdiction is invoked by unchallenged pleadings.[17]

---

[17] Federal courts allow subject matter jurisdiction to be raised for the first time on appeal.  Arbaugh, 546 U.S. at 514 (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)).  However, as already explained, an unchallenged good-faith allegation can be sufficient to invoke jurisdiction.  And once jurisdiction is invoked and the time of direct appeal has passed, the defendant has no valid objection.

¶39 Other federal cases also have concluded that "arising under" jurisdiction is invoked by the pleadings. In Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908), the United States Supreme Court explained, "It is the settled interpretation . . . that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."[18] Id. at 152 (emphasis added); see also Johnson v. Apna Ghar, Inc., 330 F.3d 999, 1001 (7th Cir. 2003) (quoting Sharpe v. Jefferson Distrib. Co., 148 F.3d 676, 677 (7th Cir. 1998) (modifications in original) ("If Johnson presents 'a non-frivolous claim under federal law; no more is necessary for subject-matter jurisdiction. A plaintiff's inability to demonstrate that the defendant [is an "employer"] is just like any other failure to meet a statutory requirement. There is a gulf between defeat on the merits and a lack of jurisdiction.'")); Kulick v. Pocono Downs Racing Ass'n, Inc., 816 F.2d 895, 897-98 (3d Cir. 1987) ("Under either section [of federal law], a court has jurisdiction over the dispute . . . . Once the plaintiff has met [a] threshold pleading

_____

[18] We have discussed federal case law in this opinion for the sole purpose of interpreting the phrase, "arising under." We note that federal law has permitted jurisdictional challenges on appeal; however, generally, it does not permit collateral attacks on subject matter jurisdiction. See Chicot Cty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 375-78 (1940); see also Michael J. Edney, Comment, Preclusive Abstention: Issue Preclusion and Jurisdictional Dismissals after Ruhrgas, 68 U. Chi. L. Rev. 193, 196-97 (2001) ("If the rendering court never addressed the question of subject matter jurisdiction, and vertical appeals have been exhausted, then any objection to subject matter jurisdiction has been waived.").

18

requirement, however, the truth of the facts alleged in the complaint is a question on the merits, as is the legal question whether the facts alleged establish a violation.").

¶40 Legal scholars have described "arising under" jurisdiction similarly. As one wrote:

> [T]he "arising under" (or "brought under" or "commenced to redress a deprivation of") jurisdictional grants do not ask historical factual questions. They ask only for a prediction from the court: Does it appear (based solely on the pleadings) that the plaintiff seeks relief created or made possible by a federal enactment?

Howard M. Wasserman, Jurisdiction and Merits, 80 Wash. L. Rev. 643, 701 (2005). The same scholar has also stated, "[a] court measuring its subject mat[t]er jurisdiction cannot look anywhere other than the affirmative claims properly stated in the complaint." Howard M. Wasserman, Jurisdiction, Merits, and Substantiality, 42 Tulsa L. Rev. 579, 590 (2007); see also Brianna J. Fuller, Developments in the Law, III. Federal Question Jurisdiction, 37 Loy. L.A. L. Rev. 1443, 1474 (2004) (citing The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913)) (modifications in original) ("If done by the book, the court should look at the allegations in the complaint to see if they would raise a substantial federal question as alleged. This should be made independently of 'whether the claim ultimately [would] be held good or bad.'").

¶41 We conclude that Cedarburg invoked municipal court subject matter jurisdiction conferred by Article VII, Section 14 of the Wisconsin Constitution by the pleadings (civil traffic citations) that alleged violations that arose under municipal

19

ordinances. Stated otherwise, the proceedings on the traffic citations were grounded in allegations that Hansen operated a vehicle while intoxicated in violation of municipal ordinance.

¶42 We discussed the impact of municipal and state OWI charges on circuit court subject matter jurisdiction in Rohner. Rohner, 108 Wis. 2d 713. Paul Rohner was first convicted for OWI in 1979. Id. at 715. In 1980, he was cited for OWI under a county ordinance. Id. The case proceeded in circuit court, but pursuant to an alleged violation of a county ordinance. Id. When it went to trial, Rohner moved to dismiss the proceedings on the ground that the court lacked subject matter jurisdiction to adjudicate an ordinance violation. Id. The circuit court recognized that Rohner had a prior OWI conviction, but concluded that, nonetheless, it had jurisdiction to proceed on the 1980 OWI ordinance violation. Id.

¶43 We disagreed. Id. at 720-21. We explained "that the [S]tate has the exclusive authority to prosecute second offenses for drunk driving" under State statutes, so Rohner could not be convicted of violation of a county ordinance. Id. at 722. "The legislative goal of providing uniform traffic enforcement would be subverted if local governments were allowed to punish second offenders with first offense penalties." Id. at 720. We held that a county ordinance "can have no application to a second or subsequent offense." Id. at 722.

¶44 Over time, our holding in Rohner was understood as imposing a duty on city attorneys and prosecutors who had knowledge of a prior OWI conviction to correctly charge subsequent OWIs. In

20

one such case, Albert R. Jensen was undercharged with a first-offense OWI in municipal court.  City of Kenosha v. Jensen, 184 Wis. 2d 91, 93, 516 N.W.2d 4 (Ct. App. 1994).  Jensen pled no contest, and the municipality was unaware of Jensen's prior offense.  Id.  Subsequently, the City realized it had made a charging error, and it asked the municipal court to vacate the judgment and dismiss the municipal citation without prejudice. Id. at 93-94.  The municipal court did so, permitting the State to proceed criminally against Jensen for his second OWI.  Jensen objected, saying the municipal court lacked the ability to do so. Id. at 94.  The court of appeals agreed with the City of Kenosha and held that the municipal court had the inherent authority to vacate its judgment.  Id. at 98.  However, the court of appeals also opined:

> We are not holding that in every OWI-BAC case where the municipal attorney finds out that an offense is actually a second or subsequent offense within five years, the municipal attorney must seek vacation of the municipal judgment before criminal proceedings can ensue.  Quite the contrary, the State may proceed regardless of whether the municipal attorney or the municipal court first acts. As the State points out in its amicus curiae brief, a municipal court does not have subject matter jurisdiction to try and convict a criminal operating while intoxicated.  Any such municipal action is null and void [under Rohner].

Id. at 98-99.

¶45  Notably, "[a]t the time we decided Rohner, our case law did not clearly distinguish between the concepts of subject matter jurisdiction and competenc[e]."  Booth, 370 Wis. 2d 595, ¶14 (citing Xcel Energy Servs., Inc. v. LIRC, 2013 WI 64, ¶27 n.8, 349

21

Wis. 2d 234, 833 N.W.2d 665).  Therefore, we labeled the concern one of subject matter jurisdiction in Rohner, as did the court of appeals in Jensen.

¶46  In Booth, we took the opportunity to clarify the legal foundation of Rohner.  Booth, 370 Wis. 2d 595, ¶14.  The facts of Booth are highly similar to the facts of the matter now before us, except that the undercharged offense in Booth proceeded in circuit court.  Id., ¶¶2-5.  After a thorough discussion, we concluded that our subsequent case law on competence better explained the results in Rohner.  Id., ¶14.  We also withdrew language from all decisions that suggested otherwise.  Id.  This withdrawal included language in Jensen that stated, "a municipal court does not have subject matter jurisdiction to try and convict a criminal operating while intoxicated."  Jensen, 184 Wis. 2d at 99.  It was competence that the municipal court lacked in Jensen, not subject matter jurisdiction.

¶47  The reasoning in our decision in Mikrut is important to review here because in Mikrut, we detailed the significant difference between subject matter jurisdiction and competence.  We said, "If a court has the power, i.e., subject matter jurisdiction, to entertain a particular type of action, its judgment is not void even though entertaining it was erroneous and contrary to the statute."  Mikrut, 273 Wis. 2d 76, ¶14.  We said that a loss of competence "can be triggered by a variety of defects in statutory procedure."  Id., ¶12.  Furthermore, "a lack of competency does not negate subject matter jurisdiction or nullify the

22

judgment . . . . Lack of competency is not 'jurisdictional' and does not result in a void judgment." Id., ¶34 (citation omitted).

¶48 Upon our review of Mikrut in Booth, we reasoned: "the proper characterization of the circuit court's deficiency in Rohner was loss of circuit court competency to proceed to judgment rather than negation of subject matter jurisdiction." Booth, 370 Wis. 2d 595, ¶14. We referred to Mikrut as teaching that "noncompliance with statutory mandates affects only a court's competency and will never affect its subject matter jurisdiction." Id.

¶49 To explain further, subject matter jurisdiction and competence are related but distinct concepts. "Subject matter jurisdiction . . . 'refers to the power of a . . . court to decide certain types of actions.'" Id., ¶7 (quoting State v. Smith, 2005 WI 104, ¶18, 283 Wis. 2d 57, 699 N.W.2d 508). In other words, subject matter jurisdiction is about the type or category of case brought. Competence presupposes a court has subject matter jurisdiction and is about a court's ability to exercise its jurisdiction in an individual case. As we explained in Booth:

> A circuit court's ability to exercise its subject matter jurisdiction in individual cases . . . may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction. The failure to comply with these statutory conditions does not negate subject matter jurisdiction but may under certain circumstances affect the circuit court's competency to proceed to judgment in the particular case before the court. A judgment rendered under these circumstances may be erroneous or invalid because of the circuit court's loss of competency but is not void for lack of subject matter jurisdiction.

23

Booth, 370 Wis. 2d 595, ¶12 (quoting Mikrut, 273 Wis. 2d 76, ¶2). An objection to subject matter jurisdiction cannot be forfeited. Booth, 370 Wis. 2d 595, ¶1. However, an objection to a court's competence can be forfeited if it is not raised in a timely manner. Id.

¶50 Hansen argues that our rationale in Booth rested on the circuit court's plenary subject matter jurisdiction. Id., ¶¶8, 12. He argues that the circuit court could have heard the proceeding in Booth if the OWI had been correctly charged as a second-offense. Id. Hansen contends however, that municipal courts are courts of limited jurisdiction, and therefore, the reasoning in Booth does not apply. He says that had his 2005 violation been correctly charged, the municipal court could not have heard it. However, it was charged based on the traffic citations which were the pleadings that commenced the action. Hansen knew that he had a prior OWI, but he chose to admit to OWI-first and take advantage of the municipal court action.

¶51 In summary, we are unpersuaded that the municipal court lacked subject matter jurisdiction. Hansen's contention goes only to an initial inability to follow Wisconsin statutes that require progressive penalties for OWI-related offenses. Accordingly, under the facts of this case, only the municipal court's competence was affected by the pleading.

24

D. Forfeiture of Competence Objections

¶52 Having concluded that the municipal court's subject matter jurisdiction was properly invoked by the pleadings but that the municipal court may have lacked competence, we next address whether Hansen has forfeited his competence-based objection. We conclude that he has.

¶53 The facts of this case are similar to Booth. The defendant in Booth waited 22 years to object. Id., ¶25. We suggested the delay and subsequent objection was "an attempt to play fast and loose with the court system, which is something this court frowns upon." Id. (citing State v. Petty, 201 Wis. 2d 337, 346-47, 548 N.W.2d 817 (1996)). For that reason, we did not exercise our inherent authority to vacate the judgment. Booth, 370 Wis. 2d 595, ¶25. Here, Hansen waited more than a decade to seek vacatur. We see no legal or equitable distinction between the passage of time in this case and the passage of time in Booth. Furthermore, we need not decide precisely when Hansen forfeited an objection to competence, because he clearly did forfeit.

III. CONCLUSION

¶54 We conclude that the 2005 pleadings filed invoked the municipal court's subject matter jurisdiction, which was granted by Article VII, Section 14 of the Wisconsin Constitution. Therefore, the municipal court had power to adjudicate the allegation that Hansen operated a motor vehicle while intoxicated in violation of a municipal ordinance. And further, even if we were to agree with Hansen that Wisconsin's statutory progressive OWI regulations were not followed in 2005, the municipal court

25

would have lacked only competence, not subject matter jurisdiction.  Id., ¶14.

¶55  And finally, an objection to a court's competence may be forfeited if it is not raised in a timely manner.  Id., ¶1.  Hansen was silent about his 2003 Florida OWI conviction until he was again arrested for OWI in 2016.  We conclude that, by his 11 years of silence, Hansen has forfeited any competence objection that could exist.  Accordingly, both his 2005 and 2003 convictions were countable offenses in 2016 for purposes of Wisconsin's statutory progressive penalty requirements, and we reverse the order of the circuit court.

*By the Court.*—The decision of the circuit court is reversed.

¶56 DANIEL KELLY, J. *(concurring).* I join the majority's opinion in its entirety. The sole purpose of my concurrence is to address the dissent's deft, but pointless, reduction of a straw man to a fine powder.

¶57 This case calls for us to determine whether the municipal court had subject matter jurisdiction over the case it heard, and if so, whether it was competent to hear it. When we talk about subject matter jurisdiction, we are addressing a court's ability to hear a particular <u>type</u> of case. City of Eau Claire v. Booth, 2016 WI 65, ¶7, 370 Wis. 2d 595, 882 N.W.2d 738 (Subject matter jurisdiction "refers to the power of a court to decide certain types of actions." (quoted source omitted)). When we talk about competence, on the other hand, we are asking whether a court should have heard <u>a specific case</u>. Id., ¶21 ("[A] failure to comply with a statutory mandate pertaining to the exercise of subject matter jurisdiction may result in a loss of the circuit court's competency to adjudicate the particular case before the court." (quoted source omitted)). Here, we must determine whether the municipal court had subject matter jurisdiction over the <u>type</u> of case brought against Mr. Hansen, and whether it was competent to hear <u>this specific case</u>.

¶58 The analytical engine powering the dissent is its failure to keep these concepts distinct. But perhaps more surprising than that is the point at which the muddling of the two began. The dissent insists that we may not analyze the municipal court's subject matter jurisdiction with respect to the case it actually heard. Instead, it says, we are supposed to act as if

1

the municipal court heard something it refers to as a "second-offense OWI" and then perform the jurisdictional analysis on that non-existent case. Based on its analysis of this case that was not, the dissent concludes that the municipal court did not have subject matter jurisdiction to hear the <u>actual</u> case it <u>did</u> hear. So its premise is a straw man: "[A] municipal court lacks the power to sentence someone convicted of a subsequent OWI offense precisely because that charge cannot be an ordinance violation, no matter how it is pled." Dissent, ¶104 n.8.

¶59 Why is this a straw man? Because Mr. Hansen was not charged with, convicted of, or sentenced for, a "second-offense OWI."[1] Instead, the City cited Mr. Hansen for violating the

---

[1] The dissent embedded a pretty significant error of law in its straw man, to wit, its belief that there is something known as a "second-offense OWI." There isn't. Nor is there any such thing as a "first-offense OWI." The substantive offense known as "OWI" exists without reference to the number of prior OWI convictions. Here's why.

The definition of an OWI offense appears in Wis. Stat. § 363.63, and contains no reference to prior OWI convictions; the penalties associated with that offense (which <u>do</u> depend on the number of prior OWI convictions) may be found in Wis. Stat. § 346.65. The penalty, however, is not an element of the substantive offense. <u>State v. Wideman</u>, 206 Wis. 2d 91, 104, 556 N.W.2d 737 (1996) ("A prior offense is an element of Wis. Stat. § 346.65(2)(c), the OWI penalty enhancement statute, rather than of Wis. Stat. § 346.63(1), the substantive crime charged."). In fact, the penalties are entirely distinct from the substantive offense: "[Wis. Stat. §] 346.63(1) . . . defines the offense of driving while intoxicated; it does not state the sentencing penalty and it does not state the term of revocation. The penalty provisions, "[Wis. Stat. §] 346.65 . . . are entirely independent of the provision that defines the offense." <u>State v. Banks</u>, 105 Wis. 2d 32, 42, 313 N.W.2d 67 (1981) (quoting and agreeing with <u>Criminal Law; Drunk Driving</u>, 69 Wis. Att'y Gen. Op. 49 (1980)). So, as a matter of law, there is no such thing as a "second-offense OWI," as the dissent seems to think.

municipality's ordinance adopting the statutory prohibition against operating a motor vehicle while "[u]nder the influence of an intoxicant" ("OWI").  Wis. Stat. § 346.63(1)(a) (2005-06) (as adopted by the City; see Cedarburg, Wisconsin Municipal Code § 10-1-1(a) (2005)).  The City prosecuted the ticket in municipal court by presenting evidence that Mr. Hanson committed an OWI ordinance violation.  Upon Mr. Hanson's plea to an OWI ordinance violation, the municipal court entered judgment against him for that ordinance violation.  The case ended with the municipal court imposing a forfeiture for an OWI ordinance violation.

¶60  But for the dissent, none of this matters in determining what type of case the municipal court heard.  Apropos of quite literally nothing, the dissent believes the municipal court wasn't really hearing an OWI ordinance violation.  Instead, contra the entirety of the record, the dissent assumes the municipal court was hearing a "second-offense OWI."  Even if such a violation existed (it doesn't), the dissent says it wouldn't matter what offense the prosecuting agency actually presented to the municipal court, or what evidence the court heard, or what judgment it

---

Although the majority uses the term "first-offense OWI" and "second-offense OWI" as harmless shorthand references, when the dissent uses them it's clear they are driving its legal analysis.  So, for example, it says that "[a] first-offense OWI citation for someone with a prior countable OWI offense is a violation that does not exist at law."  Dissent, ¶113 n.10 (emphasis in original).  I suppose it's true that there is no such thing as a first-offense OWI, but only because there is no such thing as any OWI offense defined by the number of prior OWI convictions (or lack thereof).  An OWI offense stands alone, without reference to or reliance on the defendant's prior OWI convictions.  This error suffuses the dissent's reasoning so thoroughly that it would be cumbersome to call it out each time it occurs.  So I won't.

3

entered, or which sanctions it imposed.[2] Instead, it believes the case is properly defined and categorized solely by the defendant's actions, "no matter how it is pled." Dissent, ¶104 n.8.

¶61 "No matter how it is pled"? It is hornbook law that the pleadings define, form, and create the claims the court adjudicates: "The pleading is to <u>define</u> the pleader's position in the pending litigation." <u>Hansher v. Kaishian</u>, 79 Wis. 2d 374, 385, 255 N.W.2d 564 (1977) (emphasis added). The pleadings "<u>frame</u> the issues to be resolved in the action . . . ." <u>Id.</u> (emphasis added). "The function of pleadings is . . . <u>creation</u> of the issue(s) to be tried." <u>Knapke v. Grain Dealers Mut. Ins. Co.</u>, 54 Wis. 2d 525, 533, 196 N.W.2d 737 (1972) (emphasis added).

¶62 Pleadings are not protean documents that naturally conform themselves to events as they actually occurred. Which is why it is possible for a plaintiff to suffer judgment on the pleadings even though the case could have gone forward if the plaintiff had pled the case differently. <u>See, e.g.</u>, <u>Tietsworth v. Harley-Davidson, Inc.</u>, 2007 WI 97, ¶61, 303 Wis. 2d 94, 735 N.W.2d 418 (plaintiff could not proceed on viable contract claims because the pleading contained only tort claims); <u>Piaskoski & Assocs. v. Ricciardi</u>, 2004 WI App 152, ¶29, 275 Wis. 2d 650, 686 N.W.2d 675 (plaintiff could not proceed on claims not contained in

---

[2] "The question in this case is whether a municipal court had subject-matter jurisdiction over an OWI offense that was brought as an ordinance violation in municipal court when it should have been criminally charged as a second-offense OWI in circuit court. The majority says yes, and establishes a new rule: As long as an ordinance violation was pled, a municipal court's subject-matter jurisdiction is established. Respectfully, this is wrong." Dissent, ¶85.

the pleadings). For good or ill, a party is the master of its pleadings and courts don't have the authority to act as though they are not. See, e.g., Poeske v. Estreen, 55 Wis. 2d 238, 243 n.3, 198 N.W.2d 625 (1972) (In "challenges to pleadings the court shall not '. . . give consideration to extrinsic evidence or matters outside of the pleading or pleadings and not incorporated or made part thereof . . . .'" (quoted source omitted)). So when the dissent casually backhands the pleadings in this case with its "no matter how it is pled" comment, it is ignoring the nature, function, and role of pleadings in our courts. Under the dissent's formulation, we are free to reject a pleading's contents in favor of something we believe the proponent should have pled. That proposition, if we were to accept it, would reduce pre-trial practice (and, perhaps, every other aspect of a case) to chaos. And the dissent offers neither reasoning nor authority to support such a revolutionary concept.

¶63 Perhaps the dissent's insistence that we ignore the pleadings' content grew out of the close similarity between the actual case we are considering and the case that should have been brought against Mr. Hansen (an OWI violation seeking civil penalties versus an OWI violation seeking criminal penalties). The dissent's logical error will fluoresce if we observe how it would function when the charges are not so similar. Suppose that, instead of driving drunk, someone (let's call him Mr. Smith) robbed an individual as he was walking through a Cedarburg park. Suppose further that, instead of arresting Mr. Smith for robbery, the police cited him for disorderly conduct (a violation of Cedarburg's

5

ordinances). And finally, suppose that the municipal court heard the disorderly conduct case, entered judgment against Mr. Smith for disorderly conduct, and assessed a fine allowed by the ordinances for such a violation. Now, years later, Mr. Smith appears before us claiming——just like Mr. Hansen——that the judgment against him is null and void because the municipal court lacked subject matter jurisdiction over his case.

¶64 If we were to employ the dissent's reasoning, Mr. Smith would succeed. He committed robbery, he would tell us, not disorderly conduct. So when the municipal court heard the disorderly conduct case, it was actually purporting to exercise jurisdiction over a robbery case. And because municipal courts have no subject matter jurisdiction over robbery cases, the judgment against him must be a nullity. The dissent's analysis would require the conclusion that "a municipal court lacks the power to sentence someone convicted of a [robbery] precisely because [a robbery] cannot be an ordinance violation, no matter how it is pled." Dissent, ¶104 n.8 (creative editing added).

¶65 Now, it is certainly true that if the City (in my hypothetical) had pled a robbery instead of disorderly conduct, the municipal court would have rightly dismissed the complaint for lack of subject matter jurisdiction. But must it also dismiss the case when the City pleads disorderly conduct instead of robbery? Of course not. There is no legal theory in our canon authorizing a court to pretend the plaintiff had pled something it had not, and plenty that forbids the court from doing so. Poeske, 55 Wis. 2d at 243 n.3; Tietsworth, 303 Wis. 2d 94, ¶61; Ricciardi,

6

275 Wis. 2d 650, ¶29. Therefore, the disorderly conduct claim could still proceed because municipal courts have subject jurisdiction over such offenses even though what Mr. Smith had "actually" done was commit a robbery. The dissent's reasoning would hold that the municipal court in my hypothetical was really hearing a robbery case because the reference point is not the pleadings or court proceedings, but what it knows about what Mr. Smith "actually" did. For jurisdictional purposes, however, the only things that matter are what the complaint pleads, what the municipal court hears, what judgment it renders, and what consequences it imposes.[3] If each of those elements fits within "actions and proceedings arising under ordinances of the municipality,"[4] the municipal court is properly exercising subject matter jurisdiction——even when the defendant's conduct, taken as a whole, also qualifies as something over which the municipal court

---

[3] The dissent says this is inconsistent with the court's opinion that the pleadings, alone, establish jurisdiction: "I have no idea how both rules can be true. Either subject-matter jurisdiction is established based on the pleading, and is not challengeable afterwards, or not." Dissent, ¶113 n.10. It does not appear the dissent has accounted for ¶38 n.17 and ¶39 n.18 of the majority opinion, both of which acknowledge that subject matter jurisdiction is subject to challenge after pleading. I have also addressed the evidence, judgment, and penalty phases of the case in the interest of comprehensiveness. The majority opinion contains no suggestion that it would disagree with the proposition that the municipal court must remain within its constitutionally-conferred jurisdictional boundaries throughout the proceedings.

[4] Wis. Const. art. VII, § 14.

7

has no subject matter jurisdiction. So the offense the charging agency pleads is not just important, it is nigh on dispositive.[5]

¶66 The dissent says this illustration is a mere curiosity because "a person can validly be charged with a disorderly conduct ordinance violation regardless of whether a more serious charge is warranted, but cannot be given a citation for first-offense OWI unless it is in fact a first-offense OWI."[6] Dissent, ¶113 n.10. I could not have crystallized the dissent's logical hitch better than that statement. Yes, Mr. Smith could be cited for disorderly conduct even though all the facts add up to robbery (a crime over which the municipal court has no subject matter jurisdiction), but only because <u>pleadings define the offense the court is adjudicating</u>. And in my illustration the pleadings described an offense over which a municipal court has subject matter jurisdiction. It must also be true, therefore, that if the pleadings describe an OWI ordinance violation, then the municipal court has jurisdiction over the case even though the totality of the facts add up to an offense for which criminal sanctions are available. That is to say, what is true for the first clause in the quote must also be true for the second clause. So the quote evidences a logical glitch that is causing the dissent to reject the pleading's definitional power in the OWI context even as it accepts it in my illustration.

---

[5] It is only "nigh on" dispositive because, as already noted, we must also account for the evidence produced and the court's disposition of the matter.

[6] Once again, the dissent's analysis depends on its belief in an offense known as "first-offense OWI."

8

¶67 Now we arrive at the only meaningful distinction between my illustration and Mr. Hansen's case——the question of a prosecutor's charging discretion. In most circumstances, a prosecutor has the discretion to charge an offense less serious than the facts warrant. Sears v. State, 94 Wis. 2d 128, 133, 287 N.W.2d 785 (1980) ("In addition to his discretion in determining whether or not to prosecute, the prosecuting attorney is afforded great latitude in determining which of several related crimes he chooses to file against the defendant."). But our OWI statutes make no such allowance. If a defendant has committed a prior countable OWI offense, the prosecutor may not pursue an ordinance violation, but must instead charge the OWI offense in circuit court so criminal penalties can be imposed. Booth, 370 Wis. 2d 595, ¶23 ("[C]riminal penalties are required of all OWI convictions following an OWI first-offense conviction."). So let's account for that distinction and see if it makes a difference. Let's say the Legislature enacts a statute providing that when the facts add up to a robbery the defendant may not be tried for a disorderly conduct ordinance violation, but must instead be criminally charged. That puts my illustration on all fours with this case: The municipal court has subject matter jurisdiction over both disorderly conduct ordinance violations as well as OWI ordinance violations; the municipal court has no jurisdiction over either robbery or criminal sanctions for OWI offenses; and the prosecutor has no discretion to charge ordinance violations when the defendant's actions add up to either robbery or an OWI offense punishable by criminal sanctions. The dissent says that under

9

these circumstances the municipal court has no subject matter jurisdiction to hear an OWI ordinance violation, and presumably would say the same about the disorderly conduct ordinance violation. But the only difference between my illustration as originally constructed and as modified is a statute removing a prosecutor's charging discretion. So the question is whether a statute can oust the municipal court's subject matter jurisdiction.

¶68 The answer, quite obviously, is that it cannot inasmuch as a statute cannot revoke what a constitution grants. State ex rel. Ozanne v. Fitzgerald, 2011 WI 43, ¶71, 334 Wis. 2d 70, 798 N.W.2d 436 (Prosser, J., concurring) ("Constitutional commands cannot be changed at the whim of the legislature; statutory provisions may."). The source of subject matter jurisdiction for both municipal courts and circuit courts is the Wisconsin Constitution,[7] a source impervious to statutory modifications. We have already recognized this foundational principle in the OWI context, where we said that restricting a prosecutor's charging discretion does not, and cannot, affect a court's subject matter jurisdiction: "[N]oncompliance with statutory mandates [that is, the charging decision] affects only a court's competency and will never affect its subject matter jurisdiction." Booth, 370 Wis. 2d 595, ¶14. So a statute limiting a prosecutor's charging discretion can do nothing to a municipal court's subject matter jurisdiction.

---

[7] See Wis. Const. art. VII, §§ 8, 14.

10

¶69 If that is so (and it is), then we return full circle to the dissent's problematic understanding of what a pleading is. The dissent's conclusion depends on the premise that pleadings do not define, form, or create the issues to be tried. Instead, it must assume that a pleading's contents automatically conform to, or are supplemented by, someone's birds-eye view of all the facts. That is a concept entirely unknown to the law. See Hansher, 79 Wis. 2d at 385; Knapke, 54 Wis. 2d at 533.

¶70 With these principles in mind, the unavoidable conclusion is that the municipal court had subject matter jurisdiction to hear the case it heard. We all agree that municipal courts have subject matter jurisdiction over OWI ordinance violations. And as discussed above, the pleadings define the type of action the municipal court adjudicates. The pleading in this case said Mr. Hansen had violated Cedarburg, Wisconsin Municipal Code § 10-1-1(a) (2005). That ordinance adopted "the statutory provisions in Chapters 340 to 348 of the Wisconsin Statutes, describing and defining regulations with respect to vehicles and traffic," except for "any regulations for which the statutory penalty is a fine or term of imprisonment or exclusively state charges . . . ." Because Cedarburg did not adopt any criminal penalties, the offense described in the pleading can be nothing but an OWI ordinance violation punishable by civil penalties.

¶71 According to our law (but not according to the dissent, of course) the pleading defined the case as a type of action over which the municipal court had subject matter jurisdiction. And

11

the proceedings never deviated from that foundational definition. It did not hear evidence that would require imposition of criminal sanctions, and it did not in fact impose a criminal sanction. From start to finish, therefore, the "type of action[]" over which the municipal court presided remained an ordinance violation. And because it was the type of matter the constitution entrusts to municipal courts, the municipal court had subject matter jurisdiction over Mr. Hansen's case.

¶72 But just because the municipal court had subject matter jurisdiction does not mean the municipal court should have adjudicated Mr. Hansen's case. Not because the case was of the wrong type, but because a piece of information (unknown to the City and the municipal court at the time) triggered a statutory command that Mr. Hansen be prosecuted as a criminal instead of an ordinance violator. This is where the concept of "competency" plays its role. Whereas subject matter jurisdiction addresses the "type" of case a court may hear, "competency refers to its 'ability to exercise the subject matter jurisdiction vested in it' . . . ." Vill. of Elm Grove v. Brefka, 2013 WI 54, ¶16, 348 Wis. 2d 282, 832 N.W.2d 121, amended, 2013 WI 86, 350 Wis. 2d 724, 838 N.W.2d 87 (quoted source omitted). Consequently, a court may simultaneously have subject matter jurisdiction over a case, but have no ability to exercise it.

¶73 Because Mr. Hansen had a prior OWI, his commission of an OWI violation was punishable by criminal sanctions. See generally Wis. Stat. § 356.65(2) (describing how penalties escalate for successive OWI violations); see also Cty. of Walworth v. Rohner,

12

108 Wis. 2d 713, 716, 324 N.W.2d 682 (1982) ("Sec. 346.65(2) establishes an escalating penalty scheme for violation of the drunk driving statute."). Therefore, the City erred when it cited Mr. Hansen for an OWI ordinance violation——not because he committed a "second-offense OWI," but because his OWI violation was subject to criminal sanctions, which only circuit courts may assess. But this error is extrinsic to the court's proceedings, not intrinsic. That is to say, it affected what the case should have been, not what the case was. Subject matter jurisdiction concerns itself with what the case was. Competency concerns itself with what it should have been. Mr. Hansen's case before the municipal court was an OWI ordinance violation. It should have been an OWI violation pursued in a circuit court so that criminal sanctions could be assessed. So the municipal court simultaneously had subject matter jurisdiction over the OWI ordinance violation, but did not have competency to hear the case because our statutes require that it be pursued in circuit court.

¶74 The dissent's straw man indelibly colored its understanding and discussion of Booth, Rohner, and City of Kenosha v. Jensen, 184 Wis. 2d 91, 516 N.W.2d 4 (Ct. App. 1994). But if it had reoriented its analysis to account for the fact that the municipal court adjudicated an OWI ordinance violation, it would have found that these cases are consistent with the court's conclusion today. This trio (after Booth's adjustment to account for the difference between competency and subject matter jurisdiction) teaches that circuit courts have exclusive jurisdiction to prosecute OWI violations punishable by criminal

13

sanctions, and that they lack the competency to adjudicate such cases as ordinance violations. To the extent the court of appeals suggested in Jensen that the municipal court had heard a criminal OWI case, it made the same mistake as the dissent. Eliminating that mistaken assumption and applying the Booth adjustment brings Jensen into perfect alignment with both Booth and Rohner.

¶75 The dissent derides Booth's correction of prior cases as a "chiropractic adjustment," whatever that means, but otherwise refuses to acknowledge its import with respect to Banks and Jensen. The Booth analysis applies to municipal courts as well as circuit courts. The effects are not as broad because a municipal court's subject matter is not as broad as that of a circuit court. But with respect to the matter at hand, there is no relevant distinction. Both the circuit court in Booth and the municipal court here had subject matter jurisdiction to hear OWI ordinance cases. In both Booth and this case, it turns out that the defendant should not have been charged with an OWI ordinance violation. That error, however, affects competency, not jurisdiction. As we said in Booth, "noncompliance with statutory mandates affects only a court's competency and will never affect its subject matter jurisdiction." 370 Wis. 2d 595, ¶14. Therefore, we concluded, "the proper characterization of the circuit court's deficiency in Rohner was loss of circuit court competency to proceed to judgment rather than negation of subject matter jurisdiction." Id. There is no reason this principle does not apply to municipal courts just as it does to circuit courts. Indeed, it must apply with equal force to municipal courts, and could hardly be otherwise.

14

The Wisconsin Constitution's conferral of subject matter jurisdiction on municipal courts is no more susceptible to statutory modification than its conferral of subject matter jurisdiction on circuit courts. Our OWI statutes can deprive the municipal court of competency to hear a specific case, but as we recognized in Booth, they can never affect the court's subject matter jurisdiction. Consequently, because the municipal court had subject matter jurisdiction to hear an OWI ordinance violation, Booth says its jurisdiction cannot be dislodged simply because the case should have been charged as a criminal OWI violation. It merely loses competence.

¶76 The dissent's refusal to read Banks and Jensen in light of Booth apparently stems from its belief that we shared its straw man's assumption that we must perform the jurisdictional analysis on the case that should have been brought rather than the case the court actually adjudicated. But we did not, and the entirety of Booth's analysis rejects that assumption. The whole point of Booth was to determine whether the circuit court had competency to adjudicate the case presented to it——an OWI ordinance violation. Our conclusion that it lacked competence depended entirely on the fact that the case it adjudicated actually was an ordinance violation, not a criminal OWI in disguise. Here, just as in Booth, the municipal court heard an ordinance violation.[8] And just like in Booth, the municipal court had subject matter jurisdiction to

---

[8] The record is uncompromisingly clear on this point——the pleadings, the evidence, the judgment, and the forfeiture all demonstrate beyond a cavil of a doubt that the municipal court adjudicated a first-offense OWI.

15

hear such a case. And just like in Booth, the municipal court was not competent to adjudicate the ordinance violation because it should have been charged as a criminal matter.[9]

¶77 The dissent contains one more significant error that bears some discussion. It correctly observes that subject matter jurisdiction is always subject to challenge. State v. Bush, 2005 WI 103, ¶19, 283 Wis. 2d 90, 699 N.W.2d 80 holding modified by Booth, 370 Wis. 2d 595 ("[C]hallenges to subject matter jurisdiction cannot be waived[.]"). But in making that observation, it simultaneously misconstrues the nature of such a challenge:

> If the pleading, trial, judgment, and consequences imposed effectually establish subject-matter jurisdiction, how can that oft-repeated precedent allowing subject-matter jurisdiction challenges after the fact still be true? This is not the way subject-matter jurisdiction works in federal court, and this is not the way we have ever described the subject-matter jurisdiction of municipal courts or other judicial bodies with limited subject-matter jurisdiction until today.

Dissent, ¶113 n.10.

¶78 The key to a successful jurisdictional challenge is understanding that it is a subtractive endeavor. That is to say, a litigant setting out to demonstrate a court lacks jurisdiction must establish that one or more conditions or facts necessary to the invocation of jurisdiction does not exist. State ex rel. R.G. v. W.M.B., 159 Wis. 2d 662, 668, 465 N.W.2d 221 (Ct. App. 1990)

---

[9] There is no need to overrule Banks or Jensen in this case, in whole or in part. But only because Booth already rejected the conflation of subject matter jurisdiction and competence on which the dissent's analysis depends.

16

("The party claiming that a judgment is void for lack of subject matter jurisdiction has the burden of proving subject matter jurisdiction did not exist."). Thus, if the plaintiff in a federal case invokes diversity jurisdiction, the defense can defeat the court's jurisdiction by demonstrating one of two conditions is not true——either that the parties are not diverse, or the amount in controversy does not satisfy the threshold. Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 676 (7th Cir. 2006) (affirming the district court's order remanding a case to state court for lack of complete diversity of the parties); and Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 958 (7th Cir. 1998) ("Unless the amount in controversy was present on the date the case began, the suit must be dismissed for want of jurisdiction.").

¶79 The nature of the challenge is no different when considering the municipal court's subject matter jurisdiction. If Mr. Hansen is to succeed, he must prove that a fact or condition necessary to the invocation of the municipal court's subject matter jurisdiction does not obtain. We know that, pursuant to the Wisconsin Constitution, a municipal court has subject matter jurisdiction over "actions and proceedings arising under ordinances of the municipality."[10] We also know that Cedarburg has an ordinance making it unlawful to operate a vehicle while intoxicated as described by Wis. Stat. § 346.63(1)(a). See Cedarburg, Wisconsin Municipal Code § 10-1-1(a) (2005). And although we informally refer to the citation in this case as being

---

[10] Wis. Const. art. VII, § 14.

17

a "first-offense OWI," there is no such thing——an OWI offense exists separate and apart from the number of the defendant's prior OWI convictions. See supra ¶59 n.1. And that necessarily means there is nothing in the ordinance or the Wisconsin Constitution that requires proof that the defendant had no prior OWI convictions as a predicate to invoking the municipal court's jurisdiction. Consequently, because the citation pled a violation of Cedarburg's ordinance, and invoking the municipal court's subject matter jurisdiction did not require establishing that Mr. Hansen's conduct did not require imposition of criminal penalties, the jurisdictional challenge must necessarily fail.

¶80 The dissent's misunderstanding of jurisdictional challenges apparently flows from its assumption that they can be additive, as opposed to subtractive, in nature. That is, it seems to believe that if a defendant's conduct adds up to an offense over which the municipal court does not have jurisdiction, then it necessarily follows that the defendant's conduct cannot comprise an offense over which it does have subject matter jurisdiction. But as demonstrated by my disorderly conduct/robbery illustration, that is most assuredly not true. And the statutory elimination of the prosecutor's charging discretion cannot change this because we know that statutes cannot affect constitutional grants of subject matter jurisdiction.

¶81 That is not to say that OWI ordinance violations are immune from jurisdictional challenges. To the contrary, it is simply to say that, like all other such challenges, they are subtractive in nature. An attempt to assess criminal sanctions

18

against Mr. Hansen in municipal court, for example, would be subject to a jurisdictional challenge. Mr. Hansen would merely need to point out that criminal sanctions do not arise under a municipal ordinance. Because the municipal court only has jurisdiction over ordinance violations, with their attendant civil penalties, Mr. Hansen's challenge would effectively demonstrate that one of the necessary conditions to invoking the municipal court's subject matter jurisdiction has not been satisfied.[11]

¶82 There is no need to catalog the rest of the errors in the dissent's analysis——they are all premised on the initial assumption that we must act as though the municipal court heard a case that it did not. Because of that mistaken assumption, the dissent was unable to keep the concept of subject matter jurisdiction distinct from a court's competence. Without those foundational errors, the case resolves as a matter of course in a manner that I suspect even the dissent would accept. As the majority explained, objections to a court's competency must be timely raised, whereas objections to a court's subject matter jurisdiction may be raised at any time.[12] Majority op., ¶49. Because Mr. Hansen's challenge goes to the municipal court's competence to hear his case, his failure to raise it in a timely

---

[11] This explanation, of course, is based on the fact that pleadings define, form, and create the issues to be adjudicated. I recognize that the dissent does not believe this.

[12] See United States v. Cotton, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.").

19

manner means he may no longer challenge the judgment. Booth, 370 Wis. 2d 595, ¶25.

¶83 Because I agree that the municipal court had subject matter-jurisdiction, but not competency, over Mr. Hansen's case, I join the majority opinion.

¶84 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

¶85 BRIAN HAGEDORN, J. *(dissenting).* The question in this case is whether a municipal court had subject-matter jurisdiction over an OWI offense that was brought as an ordinance violation when it should have been criminally charged as a second-offense OWI in circuit court. The majority says yes, and establishes a new rule: as long as an ordinance violation was pled, a municipal court's subject-matter jurisdiction is established. Respectfully, this is wrong.

¶86 A faithful application of our constitution, statutes, and cases yields a contrary result. Our law makes clear that municipal courts are courts of limited subject-matter jurisdiction that may only hear ordinance violations. A second-offense OWI is a criminal offense, not an ordinance violation, and must be brought as such. Accordingly, the municipal court lacked subject-matter jurisdiction to entertain the improperly charged OWI offense, and the judgment is null and void.

I

¶87 The basic principles governing this case are not complicated. In order to hear a particular case, a court must have power to entertain the kind of action brought. This power is known as subject-matter jurisdiction. Wis. Stat. § 801.04(1) (2017-18).[1] Subject-matter jurisdiction "is conferred by the constitution and statutes of this state and by statutes of the United States." Id. But even assuming a court has subject-matter

_____

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version.

jurisdiction, a court wishing to render a valid judgment must have the power to exercise that jurisdiction in the particular case before it. This is called competence. Village of Trempealeau v. Mikrut, 2004 WI 79, ¶9, 273 Wis. 2d 76, 681 N.W.2d 190.

¶88 If a court lacks subject-matter jurisdiction, a judgment entered by the court is null and void because the court never had the power to hear the case in the first place. Kohler Co. v. DILHR, 81 Wis. 2d 11, 25, 259 N.W.2d 695 (1977). A court may also lose its competence——and thus be deprived of the power to enter a valid judgment——"when the parties seeking judicial review fail to meet certain statutory requirements."[2] Xcel Energy Servs., Inc. v. LIRC, 2013 WI 64, ¶28, 349 Wis. 2d 234, 833 N.W.2d 665. But unlike the absence of subject-matter jurisdiction, a court's loss of competence generally does not void a prior judgment.

¶89 The subject-matter jurisdiction of circuit courts is defined by the Wisconsin Constitution, which states: "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state . . . ." Wis. Const. art. VII, § 8. In recent years, we have made an effort to clarify subject-matter jurisdiction and competence. And in Mikrut, we explained that pursuant to this constitutional language, circuit courts have plenary subject-matter jurisdiction. 273 Wis. 2d 76, ¶¶8-9. That is, circuit

---

[2] A statutory mandate that is "central to the statutory scheme" deprives a court of its competence. See Xcel Energy Servs., Inc. v. LIRC, 2013 WI 64, ¶28, 349 Wis. 2d 234, 833 N.W.2d 665 (quoting Village of Trempealeau v. Mikrut, 2004 WI 79, ¶10, 273 Wis. 2d 76, 681 N.W.2d 190).

courts have the power to hear any type of case, and this power may not be curtailed by statute. Id.

¶90 How then do we categorize failures to comply with various statutory requirements in circuit court? These failures are not matters of subject-matter jurisdiction——which, again, "is plenary and constitutionally-based." Id., ¶9. Rather, statutory noncompliance implicates only a circuit court's competence. Id.

¶91 The subject-matter jurisdiction of municipal courts works quite differently. We begin once more with the Wisconsin Constitution, which provides in relevant part: "All municipal courts shall have uniform jurisdiction limited to actions and proceedings arising under ordinances of the municipality in which established." Wis. Const. art. VII, § 14. Thus, the Wisconsin Constitution does not grant municipal courts the same kind of plenary subject-matter jurisdiction granted to circuit courts. Rather, municipal court jurisdiction is "limited" only "to actions and proceedings arising under ordinances." Id.

¶92 This limited grant of subject-matter jurisdiction is further colored by statute.[3] Wisconsin Stat. § 755.045(1) provides that "[a] municipal court has exclusive jurisdiction over an action in which a municipality seeks to impose forfeitures for violations of municipal ordinances of the municipality that operates the court . . . ." And relevant here, Wis. Stat. § 349.06(1) permits

---

[3] Because Article VII, Section 14 authorizes the legislature to establish a municipal court, we have recognized our municipal courts "are creatures of the legislature" that are bound by the legislature's constitutional policy choices. See City of Sun Prairie v. Davis, 226 Wis. 2d 738, 755-56, 595 N.W.2d 635 (1999).

3

municipalities to adopt municipal traffic ordinances that strictly conform to the state's traffic laws and "for which the penalty thereof is a forfeiture."

¶93 Understanding the issue in this case, as well as prior cases on these matters, requires one additional piece of background: our statutory scheme for OWIs and its escalating penalty structure. Wisconsin statutes define the violation of operating while intoxicated in Wis. Stat. § 346.63(1). However, the penalty for the violation is separately laid out in Wis. Stat. § 346.65(2)(am). That paragraph establishes an escalating penalty structure that turns on the number of prior countable offenses. The bottom line is that first-offense OWIs are civil in nature and punishable by forfeiture——a policy decision unique to this state——while all subsequent OWI offenses are criminal matters. See § 346.65(2)(am).[4]

II

¶94 With this background in mind, we turn to our cases applying these principles. In 1981, this court first explained the mandatory OWI penalty structure described above. State v. Banks, 105 Wis. 2d 32, 39-43, 313 N.W.2d 67 (1981). Banks involved

---

[4] The concurrence accuses this dissent of "a pretty significant error of law" for saying "something known as a 'second-offense OWI'" exists. Concurrence, ¶59 n.1. Yet that same nomenclature for OWI offenses under our unique statutory scheme is used by the majority in this very case, and in innumerable other cases in the Wisconsin Reports. Majority op., ¶¶14, 17, 19, 32; see also, e.g., City of Eau Claire v. Booth, 2016 WI 65, ¶16, 370 Wis. 2d 595, 882 N.W.2d 738 ("Booth Britton's argument fails because first-offense and second-offense OWIs are both offenses known at law as set forth in our statutes.").

a civil forfeiture judgment entered on an OWI citation that should have been charged as a second-offense crime. Id. at 43. At the time the judgment was entered, the presiding court commissioner was "unaware" that only two weeks earlier the defendant had been convicted of a separate OWI offense. Id. at 36. When so advised, the court commissioner vacated the judgment as null and void and referred the matter for criminal prosecution, despite the fact that the citation was pled and tried as a first-offense civil forfeiture. Id. Banks was criminally charged with a second-offense OWI, and eventually this court was called to address his claim that the criminal prosecution constituted double jeopardy. Id. at 38.

¶95 We said no such violation had occurred. Instead, we stated that, because the OWI offense should have been criminally charged as a second offense,[5] the proceeding before the court commissioner was "in effect a nullity for lack of jurisdiction." Id. at 43-44. This is so because the court commissioner had no statutory authority to preside over a case involving a criminal drunk driving offense, and therefore the civil forfeiture judgment on the incorrectly charged OWI offense had been properly vacated. Id. at 40-41.

---

[5] Starting with Banks, our cases have consistently interpreted the OWI penalty structure to require mandatory escalating penalties with each subsequent offense. See State v. Banks, 105 Wis. 2d 32, 39-43, 313 N.W.2d 67 (1981); City of Lodi v. Hine, 107 Wis. 2d 118, 122-23, 318 N.W.2d 383 (1982); County of Walworth v. Rohner, 108 Wis. 2d 713, 717-18, 324 N.W.2d 682 (1982); State v. Williams, 2014 WI 64, ¶¶21, 30, 32, 355 Wis. 2d 581, 852 N.W.2d 467; Booth, 370 Wis. 2d 595, ¶¶22-24.

5

¶96 Then, in 1982, this court considered whether a prosecutor had discretion to charge what was factually a second-offense criminal OWI as a civil forfeiture ordinance violation. County of Walworth v. Rohner, 108 Wis. 2d 713, 715, 324 N.W.2d 682 (1982). The issue in Rohner arose at trial——on an ordinance violation pleading——when it was revealed that the defendant's OWI was a second offense. Id. at 715. After the prosecutor chose not to file a new criminal complaint, the circuit court heard the action as an ordinance violation. Id. We unanimously reversed. Id. at 722. Relying on the mandatory escalating penalty structure established by the legislature, we held that a second-offense OWI must be brought as a criminal offense. Id. at 717-18 (citing Banks, 105 Wis. 2d at 39). Charging authorities have no discretion to charge what is in fact a second-offense OWI as a first-offense civil forfeiture. Id. at 720-21. And given this, it is the State that "has exclusive authority to prosecute second offenses for drunk driving." Id. at 722.

¶97 After Banks and Rohner, the court of appeals addressed the question of what becomes of a municipal court judgment on an OWI charge that should have been——indeed, per our earlier decisions, was required to be——brought as a criminal offense. In City of Kenosha v. Jensen, the City had moved the municipal court to vacate an OWI civil forfeiture judgment on the grounds that the court lacked subject-matter jurisdiction over an incorrectly charged OWI offense. 184 Wis. 2d 91, 92-93, 516 N.W.2d 4 (Ct. App. 1994). In raising its motion for postjudgment relief, the City informed the municipal court that, unbeknownst at the time

6

the forfeiture judgment was entered, the defendant had been previously convicted of a separate OWI offense. Id. at 92-94. The municipal court found it necessary to vacate the judgment, as did the circuit court. Id. Likewise, before the court of appeals, the State appeared as an amici and argued that the municipal court had no jurisdiction to hear a case involving an OWI that should have been criminally charged. Id. at 98-99. Relying on our precedent saying as much, the court of appeals agreed:

> [W]e want to make clear what we are not deciding. We are not holding that in every [OWI] case where the municipal attorney finds out that an offense is actually a second or subsequent offense within five years, the municipal attorney must seek vacation of the municipal judgment before criminal proceedings can ensue. Quite the contrary, the State may proceed regardless of whether the municipal attorney or the municipal court first acts. As the State points out in its amicus curiae brief, a municipal court does not have subject matter jurisdiction to try and convict a criminal operating while intoxicated. Any such municipal action is null and void. See County of Walworth v. Rohner, 108 Wis. 2d 713, 722, 324 N.W.2d 682, 686 (1982); State v. Banks, 105 Wis. 2d 32, 40-41, 313 N.W.2d 67, 71 (1981). As no jeopardy has attached as a result of municipal court action, the State may proceed regardless of what the municipal attorney or the municipal court does. The municipal judgment having no force or effect, it is as if it never took place.

Id. (emphasis added).

¶98 The court of appeals then rejected Jensen's argument that the City "knew or should have known" of the earlier offense at the time it negotiated a plea agreement for the now-vacated judgment. Id. at 100. As the court explained, "the City had no authority to enter the plea agreement in the first place" because

7

as a factual matter the underlying OWI was a second-offense criminal charge. Id.

¶99 For several decades now, the courts of our state have understood and held that a municipal court has no subject-matter jurisdiction over a second or subsequent OWI offense, and hence, such judgments are null and void. See, e.g., State v. Strohman, No. 2014AP1265-CR, unpublished slip op., ¶¶2-3, 17 (Wis. Ct. App. Feb. 3, 2015) (citing Jensen for the proposition that "because an offense that is actually a qualified second (or greater) OWI offense can only be criminally prosecuted, any municipal proceeding regarding such an offense is 'null and void[,]' with any such municipal judgment 'having no force or effect, [such that] it is as if it never took place'").

¶100 Three years ago, in City of Eau Claire v. Booth, we addressed whether a circuit court lacks subject-matter jurisdiction over an action based on a mischarged OWI offense. 2016 WI 65, ¶1, 370 Wis. 2d 595, 882 N.W.2d 738. Booth arose from a civil forfeiture judgment on a first-offense OWI that had been voided by a circuit court in reliance on Rohner. Id., ¶4. Applying the same long-established principles, we explained that mischarging an OWI does not affect a circuit court's subject-matter jurisdiction because circuit courts have plenary subject-matter jurisdiction under our constitution. Id., ¶¶1, 14. That is, regardless of whether an OWI is incorrectly charged as a first-offense ordinance violation or correctly charged as a second-offense crime, our constitution grants circuit courts power to hear the action and enter a judgment on the matter. Thus, even

8

though mischarging an OWI as a civil forfeiture in circuit court constitutes a failure to abide by the mandatory OWI penalty structure, statutory noncompliance of that kind results only in a loss of the circuit court's competence. Id., ¶¶14, 19, 24. Playing this logic out, we determined that the defendant forfeited her competence challenge after waiting 22 years to bring a collateral attack. Id., ¶25.

¶101 Booth drew no blood on the core holdings of Banks, Rohner, and Jensen. Because our cases since Rohner——Mikrut in particular——have more clearly distinguished circuit court subject-matter jurisdiction and competence, we withdrew any language that suggested statutory deficiencies like the one in Booth were matters of circuit court subject-matter jurisdiction as opposed to competence. Booth, 370 Wis. 2d. 595, ¶14. In so doing, we emphasized that our decision "leaves intact Rohner's holding 'that the state has exclusive jurisdiction over a second offense for drunk driving.'" Id., ¶15 (quoting Rohner, 108 Wis. 2d at 716). And in line with this exclusive prosecutorial authority, "criminal penalties are required of all OWI convictions following an OWI first-offense conviction," meaning our circuit courts have exclusive subject-matter jurisdiction to enter a judgment on a second-offense OWI. Id., ¶23 (citing Rohner, 108 Wis. 2d at 717-18, and Banks, 105 Wis. 2d at 39).

III

¶102 Applying the constitutional text and our precedent to the case before us today yields a clear outcome. Unlike circuit

9

courts, municipal courts have limited subject-matter jurisdiction. They can only hear municipal ordinance violations. Relying on the OWI statutory scheme, our cases make clear that an ordinance violation for a second-offense OWI does not exist at law; a second-offense OWI is a criminal matter. The State has exclusive authority to prosecute such charges, and circuit courts have exclusive subject-matter jurisdiction to hear such cases. Thus, a municipal court has no constitutional grant of power——i.e., no subject-matter jurisdiction——to entertain an action based on an OWI offense that statutorily should have been and must be charged as a second-offense OWI. Any judgment or order entered in such an action is null and void.

¶103 The majority's contrary conclusion finds its footing in a single proposition that amounts to a false foundation. It maintains that municipal court subject-matter jurisdiction is established based on the four corners of an ordinance citation alone. Majority op., ¶¶3, 29, 54. The majority's discussion in support of its pleading-establishes-jurisdiction rule covers three areas. First, the majority relies on the "arising under" language in Article VII, Section 14 of the Wisconsin Constitution. Second, the majority endeavors to enlist the law of federal subject-matter jurisdiction in aid of its argument. Finally, the majority implies that its holding is grounded in our prior cases, especially our recent decision in Booth. In fact, nothing in the text of our constitution, nothing in the law of federal jurisdiction, and nothing in our prior cases suggest that invoking jurisdiction conclusively establishes jurisdiction. In reaching its conclusion

10

today, the majority not only fails to apply our law, it blatantly defies it.

¶104 Starting with the constitution, as already explained, municipal court jurisdiction is limited to "actions and proceedings arising under ordinances of the municipality in which established." Wis. Const. art. VII, § 14. The straightforward reading of the constitution is that we must actually be dealing with an ordinance violation in order for the municipal court to have the power to hear the case. Nothing about the phrase "arising under" suggests mere invocation of an ordinance violation in the charging document is sufficient to actually confer jurisdiction on a municipal court.[6] If there is a textual argument otherwise, the majority does not make it. Nor does the majority cite a single Wisconsin case in support of its interpretation of this provision

---

[6] The majority latches onto the fact that the phrase "arising under" is also found in federal law. It is hornbook law that federal-question subject-matter jurisdiction is invoked when the pleading party presents a colorable claim "arising under" the Constitution or laws of the United States. See Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006) (citing 28 U.S.C. § 1331). While the nature of this "well-pleaded complaint rule" is beyond dispute, the majority treats that rule as though this closes the case. As shown below, this is wrong.

of the Wisconsin Constitution.[7] That's because, so far as I can tell, none exist.[8]

¶105 With no Wisconsin law to support its cause, the majority seeks refuge in the law of federal jurisdiction. The majority suggests subject-matter jurisdiction in federal court works in a similar way to the rule it is announcing. Not even close. While federal jurisdiction must be _invoked_ in a pleading, it is most

---

[7] A reader might take away from the majority that Ableman v. Booth, a Wisconsin Supreme Court case from 1859, supports its view. 11 Wis. 517 (*498), 531-532 (*512) (1859). But the language quoted is actually one justice's discussion of the phrase "arising under" as it appears in the U.S. Constitution and as it relates to the subject-matter jurisdiction of federal courts. Even then, nothing in the quoted language supports the proposition that invocation of federal jurisdiction is always sufficient to establish federal jurisdiction──the lesson the majority suggests is the pertinent takeaway. As explained below, this is plainly not the law in federal courts.

[8] As part of its "arising under" discussion, the majority notes that "the city attorney is not required to allege or prove that the defendant had no prior offenses" in determining liability for a first-offense OWI in municipal court. Majority op., ¶30. This is true, but irrelevant. And I do not take this to be a separate argument relating to subject-matter jurisdiction. After all, rendering judgment in a case necessarily includes prescribing the punishment for an offense. Again, subject-matter jurisdiction is "the power of a court to decide certain types of actions." State v. Smith, 2005 WI 104, ¶18, 283 Wis. 2d 57, 699 N.W.2d 508 (citing United States v. Morton, 467 U.S. 822, 828 (1984)). And it must be true that a court needs subject-matter jurisdiction through sentencing to decide an action. But to the majority's broader point, even if a prior countable offense remains undisclosed throughout a municipal court proceeding, that silence does not in and of itself mean that jurisdiction was ever had. As Banks, Rohner, and Jensen make clear, a subsequent OWI offense must be charged as such, and a municipal court lacks the power to sentence someone convicted of a subsequent OWI offense precisely because that charge cannot be an ordinance violation, no matter how it is pled.

12

certainly not <u>established</u> in all cases simply on the grounds that it was pled.

¶106 Like municipal courts in Wisconsin, federal courts are courts of limited subject-matter jurisdiction, empowered only to hear cases as authorized by the U.S. Constitution and federal statutes. <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). Thus, jurisdiction must be affirmatively alleged by citation to a statutory basis or by sufficient factual allegations. <u>Id.</u> Mere pleading of federal jurisdiction doesn't settle the matter, however. Rather, federal jurisdiction is subject to challenge throughout the proceeding. See <u>Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); <u>see also</u> <u>United States v. Cotton</u>, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."). Importantly, federal courts themselves are obligated to independently ensure that jurisdiction is had at all stages of a proceeding.[9] <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526

---

[9] Given this independent obligation, any merits decision entered by a federal court is deemed to include a factual determination that subject-matter jurisdiction was established. <u>Chicot Cty. Drainage Dist. v. Baxter State Bank</u>, 308 U.S. 371, 376-77 (1940). This is so even if that determination is not explicitly recognized in the court's decision. See 13D Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3536 (3d ed. 2008) (discussing <u>Travelers Indem. Co. v. Bailey</u>, 557 U.S. 137, 152-53 (2009)). Because this finding is necessarily included within a federal court decision, it is generally recognized that any errors regarding the determination of jurisdiction must be made through direct appeal, not collateral attack. <u>Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de</u>

13

U.S. 574, 583-84 (1999). Thus, even on appeal, a federal court must dismiss any action upon discovery that jurisdiction is not had or was not had by a court below. Id.

¶107 It is hard to overstate the obvious: the majority's rule, which it presents as somehow supported by the law of federal jurisdiction, stands instead in direct conflict. If mere invocation is enough, how is it that a party can challenge jurisdiction after it has been pled? What of the federal court's independent obligation to ensure jurisdiction is had——again, regardless of the invocation of subject-matter jurisdiction in a pleading? How is it that a federal appeals court can dismiss the case for lack of subject-matter jurisdiction years after the pleading was filed? None of the cases the majority cites support the proposition that federal jurisdiction is conclusively established by virtue of its invocation in a pleading. It is not. Federal jurisdiction is challengeable in federal court regardless of the sufficiency of the pleading. The majority's rule granting subject-matter jurisdiction through a pleading finds no support in Wisconsin or federal law.

¶108 This lack of support notwithstanding, the majority aims to align its conclusion here with several of the on-point Wisconsin cases explained above. Across eight paragraphs, the majority describes those cases and closes by simply reasserting that subject-matter jurisdiction is had based on the allegations in the citation. Majority op., ¶¶42-50. No effort is made to engage the actual holdings or reasoning of the cases. The majority fails to

Guinee, 456 U.S. 694, 702 n.9 (1982).

14

engage our cases because it cannot; its proposed rule runs right over what those cases actually say.

¶109 For instance, the majority concludes the charging document alone establishes subject-matter jurisdiction. But in Banks, the defendant pled to a first-offense civil forfeiture, and that fact made no difference when we determined that the entire proceeding was "in effect a nullity" because the court commissioner had no jurisdictional authority to hear what was in fact a second-offense criminal OWI. 105 Wis. 2d at 36, 43. Jensen reached the same conclusion: a judgment was entered on a civil forfeiture, but later vacated because the incorrectly charged OWI meant the entire action was "null and void" because the municipal court had no subject-matter jurisdiction. 184 Wis. 2d at 93, 99. Neither of these outcomes are consistent with, much less possible under, the majority's new rule.

¶110 The majority also suggests, albeit indirectly, that the prosecuting authority's knowledge of a prior offense might affect a court's subject-matter jurisdiction. See Majority op., ¶¶14, 17, 44. But in Banks, we noted that the court commissioner entered a civil forfeiture judgment "unaware" of the defendant's prior offense. 105 Wis. 2d at 36. This lack of knowledge had no effect on our conclusion that that judgment was null and void because there was no subject-matter jurisdiction. Id. at 41, 43. Similarly in Jensen, the municipal court was without subject-matter jurisdiction even though the prior offense was "unbeknownst" to the court at the time it entered the civil forfeiture judgment. 184 Wis. 2d at 92-93, 98-99. And in Rohner,

15

we held that the State has exclusive prosecutorial authority over all subsequent OWI offenses, never once nuancing the rule with a knowledge requirement. 108 Wis. 2d at 722; see also Booth, 370 Wis. 2d 595, ¶15 (reaffirming that holding). Once again, the majority's subtle importation of a knowledge requirement stands at direct odds with prior cases, and no effort is made to reconcile the inconsistencies.

¶111 Along these lines, while the majority never quite says so, it implies that Booth stands for the proposition that statutory noncompliance equals a competence problem no matter what court you're dealing with. As explained above, however, Booth was about statutory noncompliance and loss of competence in circuit courts, which have plenary subject-matter jurisdiction under our constitution. Regardless of whether an OWI is incorrectly charged as a first-offense ordinance violation or correctly charged as a second-offense crime, a circuit court has subject-matter jurisdiction to hear the action and enter a judgment on the matter. A municipal court's subject-matter jurisdiction, on the other hand, hinges entirely on whether the offense is actually an ordinance violation. No "Booth adjustment," in the concurrence's parlance, allows us to paper over the constitution's very different grants of subject-matter jurisdiction to circuit and municipal courts.

¶112 Collecting all of the above, if the majority is correct, and pleading an OWI ordinance violation establishes subject-matter jurisdiction, Banks and Jensen must be overruled. If an OWI offense is considered correctly charged solely because a municipal

16

prosecutor lacked knowledge of a prior offense, Rohner——and every other case that explains and relies on the mandatory nature of the OWI penalty structure, including Booth——needs to be modified. See Banks, 105 Wis. 2d at 39-43; City of Lodi v. Hine, 107 Wis. 2d 118, 122-23, 318 N.W.2d 383 (1982); Rohner, 108 Wis. 2d at 717-18; State v. Williams, 2014 WI 64, ¶¶21, 30, 32, 355 Wis. 2d 581, 852 N.W.2d 467; Booth, 370 Wis. 2d 595, ¶¶22-24. Rather than forthrightly acknowledge any of this, the majority simply sidesteps any substantive engagement with these decisions.

¶113 It is difficult to figure out the consequences of a rule that pleading conclusively establishes subject-matter jurisdiction——a rule heretofore unknown in the law.[10] What if the

---

[10] The concurrence joins the majority's holding that pleading establishes jurisdiction. Concurrence, ¶56. At the same time, it proclaims that subject-matter jurisdiction depends not just on the pleading, but also on "the evidence produced and the court's disposition of the matter." Concurrence, ¶65 n.5. Subject-matter jurisdiction, according to the concurrence, is established if "what the complaint pleads, what the municipal court hears, what judgment it renders, and what consequences it imposes" all constitute an ordinance violation. Concurrence, ¶65. I have no idea how both rules can be true. Either subject-matter jurisdiction is established based on the pleading, and is not challengeable afterwards, or not.

17

city attorney finds out midway through the proceeding (i.e., post-pleading) that a prior OWI conviction exists, the very sequence of events in <u>Banks</u> (albeit before a court commissioner)? Can the municipal court render judgment? Could someone bring a post-trial appeal on similar grounds (again, post-pleading)?

---

Further, the concurrence's rule suffers from the same fatal disease as the majority's. Our cases have repeatedly said subject-matter jurisdiction can always be challenged, even after a case is completed, and that a defect in subject-matter jurisdiction renders a previously entered judgment null and void. <u>E.g.</u>, <u>Kohler Co. v. DILHR</u>, 81 Wis. 2d 11, 25, 259 N.W.2d 695 (1977) ("When a court or other judicial body acts in excess of its jurisdiction, its orders or judgments are void and may be challenged at any time."). If the pleading, trial, judgment, and consequences imposed effectually establish subject-matter jurisdiction, how can that oft-repeated precedent allowing subject-matter jurisdiction challenges after the fact still be true? This is not the way subject-matter jurisdiction works in federal court, and this is not the way we have ever described the subject-matter jurisdiction of municipal courts or other judicial bodies with limited subject-matter jurisdiction until today.

The concurrence also sets up a curious hypothetical regarding a municipal court's judgment for disorderly conduct. The obvious problem with this is that a person can validly be charged with a disorderly conduct ordinance violation regardless of whether a more serious charge is warranted, but cannot be given a citation for first-offense OWI unless it is in fact a first-offense OWI. A first-offense OWI citation for someone with a prior countable OWI offense is a violation that <u>does not exist at law</u>. It is not and cannot be an ordinance violation. This quirk of our OWI statutes is unlike other areas of law. The concurrence finds this "revolutionary"; but as our cases make clear, it is actually the long-established way we have interpreted our OWI statutory scheme.

Finally, the concurrence suggests a "<u>Booth</u> adjustment" to our prior cases is all the chiropractic correction needed to realign those decisions. Concurrence, ¶74. But it does not really conduct an accounting of those cases. Instead, its effort to synthesize our body of cases rests wholly on its novel subject-matter jurisdiction analysis. <u>Booth</u> was founded entirely on the plenary subject-matter jurisdiction of circuit courts. Any effort to make it do more than that here begs the question.

18

¶114 No small part of the reason we are left guessing at potential unintended consequences is the fact that none of the briefing or arguments in this case went to the majority's holding that a municipal court's subject-matter jurisdiction is established by pleading an ordinance violation, or its suggestion that the prosecuting authority's knowledge of a prior OWI offense is relevant to that question. All of this innovation originates solely from the majority's own inspiration.

¶115 So far as I can tell, the upshot of the majority is if municipal courts accidentally or unintentionally violate the constitution by deciding a case the constitution says they have no power to decide, they haven't actually violated the constitution at all. Good intentions notwithstanding, the constitution's limited grant of power to municipal courts should be read to mean what it says.

¶116 Under our long-established law, the straightforward answer to the issue in this case is that a municipal court lacks subject-matter jurisdiction over an OWI offense that was brought as an ordinance violation when it should have been criminally charged as a second-offense OWI in circuit court. The incorrectly charged OWI here is therefore null and void. I respectfully dissent.

¶117 I am authorized to state that Justices ANN WALSH BRADLEY and REBECCA FRANK DALLET join this dissent.

2